864 A.2d 421 (2005)
374 N.J. Super. 271
James J. BERNHARDT, Paul B. Smith, Plaintiffs-Respondents,
v.
ALDEN CAFÉ, Jeff Sprankle, Jr., and Nicholas Santore, Defendants, and
Greg Kuhni, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 14, 2004.
Decided January 4, 2005.
*422 Kearns, Vassallo & Kearns, Willingboro, attorneys for appellant Greg Kuni (John F. Vassallo, on the brief).
Law Office of Robert J. Campbell, Mays Landing, attorneys for respondents James J. Bernhardt and Paul B. Smith (Robert J. Campbell, on the brief).
Before Judges KING, R.B. COLEMAN and HOLSTON, JR.
The opinion of this court was delivered by
COLEMAN, R. B., J.A.D.
Defendant Greg Kuni[1] appeals from a portion of an order dated September 12, 2003. That order granted defendant's motion to vacate a May 30, 2000 default judgment but it denied defendant's request to vacate the underlying default which was entered while defendant was serving in the United States Marine Corp. We hold that default should have been vacated under the New Jersey Soldiers' and Sailors' Civil Relief Act, N.J.S.A. 38:23C-1 to  26, and under the Federal Soldiers' and Sailors' Civil Act of 1940, 50 U.S.C.A. App. § 500 et seq.[2] Accordingly, we reverse and remand.
On October 25, 1996, defendant and several other individuals were involved in a fight at the premises of defendant Alden Cafe in Maple Shade, Burlington County. At that time, Kuni was stationed in Dover, New Jersey. Shortly before the two year anniversary of that event, on October 22, 1998, plaintiffs James Bernhardt and Paul Smith commenced a civil action, seeking to recover damages for injuries they allegedly sustained. By then Kuni had been deployed to Okinawa, Japan. Plaintiffs' summons and complaint were served on Kuni a year later on November 3, 1999, by delivering a copy at the Office of the Staff Judge Advocate at Camp LeJeune, North Carolina. Defendant received those documents but did not file an answer or otherwise appear in the civil action in New Jersey. Instead, he directed a letter to plaintiffs' counsel, stating that the matter  apparently referring to the mutually filed disorderly persons complaints in municipal court  had already been settled. In that letter, defendant further stated that he had acted in self defense and that he would resist any suit. He closed by stating that he would wait for further instructions from plaintiffs' counsel or the court.
On December 22, 1999, plaintiffs sent another letter to Kuni informing him that he had failed to answer the complaint by the deadline and requesting that he provide information about his parents' homeowners' insurance. That correspondence was sent to the address on the stationery that defendant had utilized in his letter to plaintiffs' counsel rather than to the place where service of process had been made, the office of the Staff Judge Advocate. Defendant denies that he ever received the letter. Defendant was stationed in California in January 2000.
On May 26, 2000, plaintiffs requested entry of default. The certification of counsel submitted in support stated erroneously that defendant was still stationed at Camp LeJeune, North Carolina. The certification also mistakenly asserted that defendant did not fall under the Soldiers' and *423 Sailors' Relief Act. Again, defendant states he never received this mailing. He was deployed in Greece from May through June 2000.
On August 3, 2000, counsel for plaintiffs sent another letter to Kuni's letterhead address at Camp LeJeune to advise Kuni of the entry of default and that the matter would be coming up for trial in the next few months. Kuni denies having received the letter. He was deployed to California for training exercises in August 2000 and on his return from California in September 2000, his permanent place of duty was transferred from Camp LeJeune, North Carolina, to Yorktown, Virginia.
On November 10, 2000, counsel for plaintiffs prepared a certification in support of their request that judgment by default be entered against defendant. That certification indicated that counsel had contacted the JAG/DSN office and was told that defendant had not been on active duty and did not fall under the Soldiers' and Sailors' Relief Act. The certification indicated further that plaintiffs were advised that defendant could be contacted through the civil service processor or his base. Plaintiffs certified that they had been in touch with the civil service processor and were assured that defendant was receiving his correspondence. Finally, the certification disclosed that plaintiffs had settled with all the remaining defendants and that a stipulation of dismissal was circulating. The settlements with those defendants were for de minimus amounts.
On December 7, 2000, default judgment was entered against Kuni for $37,500 plus $4,091.60 in prejudgment interest and $180 in costs. On December 11, 2000, plaintiffs sent a letter to defendant at the Camp LeJeune address to inform him of the default judgment. Defendant stated he never received the letter. However, in January 2003, defendant did receive a Notice of Filing of Foreign Judgment from the court of York County in Virginia. He retained counsel and, on February 15, 2003, before being deployed to Spain, he executed a certification in support of a motion that was filed in Burlington County, New Jersey, on April 12, 2003 to vacate the default and default judgment. Plaintiffs opposed the requested relief, and the judge before whom the motion was originally returnable for oral argument requested that plaintiffs submit proof within ten days showing that defendant was given notice of the default judgment. In response, plaintiffs submitted a copy of the December 11, 2000 letter they had sent to Kuni at the Camp LeJeune address while he was stationed in Virginia. No affidavit or certification as to the mailing nor indication of a receipt or return of the certified mailing was provided in support. The motion was thereafter transferred to the judge who had earlier entered the default judgment. That judge heard oral argument on September 12, 2003, vacated the default judgment, and ordered a proof hearing on the issue of damages only. The judge stated his belief that the Soldiers' and Sailors' Act did not apply to causes of action that arise when the person is already in the military. The judge commented that defendant was aware of the civil action but had simply "sat on his duff." He declined to vacate the default.
Under the Federal Soldiers' and Sailors' Civil Relief Act of 1940 and the nearly identical state statute, default and default judgment should not have been entered or if entered under the facts of this case, they should have been vacated. Although the relevant federal and state statutes use both mandatory and permissive language[3], *424 the obvious purposes of the statutes and the circumstances of this case required that defendant's interests be protected during his active service in the military. He was stationed in various places, domestic and foreign, and was unable to defend himself properly because of his active military service. The statutes do not differentiate between claims that accrue before or during the person's active military service. The statutes are intended to protect persons from the litigation process while they are in the military service and for a brief time thereafter. That defendant had actual notice of the civil action is assumed for purposes of this appeal. That fact is not determinative.
At the outset, we note the procedural paradox of this case. The trial court found an adequate basis existed to grant relief from the default judgment but declined to set aside the underlying default. The governing rule, R. 4:43-3 provides:
For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with R. 4:50.
The referenced R. 4:50 provides in pertinent part:
On motion, with briefs, and upon such terms as are just, the court may relieve a party ... from a final judgment or order for the following reasons: ... (f) any other reason justifying relief from the operation of the judgment or order.
[R. 4:50-1.]
It is generally recognized that the requirements for setting aside a default judgment under R. 4:50-1 are more stringent than the "good cause" standard for setting aside an entry of default under R. 4:43-3. See, e.g., O'Connor v. Abraham Altus, 67 N.J. 106, 129, 335 A.2d 545 (1975). "`[A] defendant seeking to reopen a default judgment [because of excusable neglect] must show that the neglect to answer was excusable under the circumstances and that he has a meritorious defense.'" Mancini v. EDS, 132 N.J. 330, 334, 625 A.2d 484 (1993) (citing Morales v. Santiago, 217 N.J.Super. 496, 501, 526 A.2d 266 (App.Div.1987)) (quoting Marder v. Realty Construction Co., 84 N.J.Super. 313, 318, 202 A.2d 175 (App.Div.) aff'd, 43 N.J. 508, 205 A.2d 744 (1964)). We are well satisfied that defendant's active service in the military constitutes excusable neglect and that self defense, if demonstrated, would be a meritorious defense to plaintiffs' claim. We are equally satisfied that the same elements would constitute good cause under R. 4:43-3 to set aside the entry of default.
What the trial judge did  refusing to vacate the entry of default and setting a date for a proof hearing  was the equivalent of maintaining default judgment as to liability, where defendant was permitted only to contest damages. Cf. Marder v. Realty Construction Co., supra, 84 N.J.Super. at 319, 202 A.2d 175 (recognizing that "[e]ven where a defendant admits liability, a reopening of the judgment for purposes of assessing damages is proper where the defendant provides a reasonable *425 assertion to the effect that it is not liable for the amount of damages claimed by the plaintiff"). Here, defendant disputes both liability and damages. He claims he acted solely to defend himself.
The Federal Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A. app. § 501 et seq., was created to allow for the suspension of civil actions for those persons in the military in order "to allow military personnel to devote their entire energy to the defense of the nation." PNC Bank, N.A. v. Kemenash, 335 N.J.Super. 124, 127, 761 A.2d 118 (App.Div.2000). In 1979, effective in 1980, New Jersey enacted its statute, N.J.S.A. 38:23C-1 to -26, modeled after the federal statute, with a declared purpose "to maintain, secure, and protect the civil and property rights of persons in the military service." N.J.S.A. 38:23C-1. Both statutes are to be liberally construed. PNC Bank, N.A. v. Kemenash, supra, 335 N.J.Super. at 128, 761 A.2d 118.
Both acts provide, among other things, for the appointment of counsel in civil proceedings commenced against military personnel. 50 U.S.C.A. app. § 520(1) states:
In any action or proceeding commenced in any court, if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment shall file with the court an affidavit setting forth facts showing that the defendant is not in military service. If unable to file such an affidavit plaintiff shall in lieu thereof file an affidavit setting forth either that the defendant is in the military service or that plaintiff is not able to determine whether or not defendant is in such service. If an affidavit is not filed showing that the defendant is not in the military service, no judgment shall be entered without first securing an order of the court directing such entry, and no such order shall be made if defendant is in such service until after the court shall have appointed an attorney to represent defendant and protect his interest, and the court shall on application make such appointment.
(emphasis added).
The New Jersey statute contains nearly identical language, but it specifies that the required affidavit shall be filed within twenty days before the entry of judgment or final order. N.J.S.A. 38:23C-4.
In another section, 50 U.S.C.A. app. § 520(3), the federal statute states, "In any action or proceeding in which a person in military service is a party if such party does not personally appear therein or is not represented by an authorized attorney, the court may appoint an attorney to represent him...." Again, the New Jersey statute is identical. N.J.S.A. 38:23C-6.
Defendant argues that the trial court was obliged to appoint an attorney to represent and protect his interests and that it was error to enter an order of judgment without having made such an appointment. By contrast, plaintiffs insist the appointment of counsel is wholly discretionary, as reflected in the use of the permissive "may" in 50 U.S.C.A. app. § 520(3) of the federal statute and section six of the New Jersey counterpart. Whether the language of the statutes mandates the appointment of an attorney or merely authorizes the discretionary appointment of an attorney is not critical in this case since, under either interpretation, we hold it was an error not to have appointed an attorney or otherwise to have protected the defendant:
Interpretation of any statute requires reference not only to the language of the statute but also the purpose of the enactment:
The judicial goal is to carry out fairly the legislative purpose and plan, and *426 history and contemporaneous construction may well furnish important light as to that purpose and plan.
[PNC Bank, N.A. v. Kemenash, 335 N.J.Super. 124, 128, 761 A.2d 118 (App.Div.2000) (quoting New Jersey Pharm. Ass'n v. Furman, 33 N.J. 121, 130, 162 A.2d 839 (1960)).]
As noted, the declared public policy of the State [is] "to maintain, secure and protect the civil and property rights of persons in the military service." N.J.S.A. 38:23C-1. Our courts have also recognized that the purpose of the federal statute is "to give members of the Armed Forces a degree of mental repose, protect their rights and remedies and free them from hardships that might be imposed solely because of the performance of their duties." Radich v. Bloomberg et al., 140 N.J. Eq. 289, 291, 54 A.2d 247 (E. & A.1947). Although we concluded in Kemenash, supra, that the protection afforded by these statutes does not extend to persons absent from military duty without leave, such protection must be liberally construed to extend to persons, such as defendant herein, whose active military service is unbroken.
Based on the statutory language utilized and the expressly declared statutory purposes, we agree with defendant that the court was obligated either to appoint counsel or to take some other appropriate step to protect his interests. The use of "shall" in one section of the statutes and "may" in another does not signal an irreconcilable internal conflict. That difference in language simply reflects a recognition that more than one approach may be employed by the court to protect the person in active military service. For example, N.J.S.A. 38:23C-6 and 50 U.S.C.A. app. § 520(4) state the court "may appoint an attorney to represent him...." Another section authorizes a stay as a different option: "any action or proceeding ... may, in the discretion of the court ... on its own motion, and shall, on application... be stayed ... unless, in the opinion of the court, the ability of plaintiff to prosecute the action, or the defendant to conduct his defense, is not materially affected by reason of his military service." 50 U.S.C.A. app. § 521; N.J.S.A. 38:23C-8. The procedural device to be employed may be discretionary, but we are persuaded, in view of the strong public policy, that the court is obligated to protect the rights of persons in the military service and that the failure to appoint counsel or to utilize some other device to protect the interests of defendant in this case was error.
If 50 U.S.C.A. app. § 520(1) and N.J.S.A. 38:23C-4 are construed to mandate the appointment of counsel while 50 U.S.C.A. app. 521 and N.J.S.A. 38:23C-6 are viewed as merely authorizing such appointment in the discretion of the court, there is still no conflict. The former mandate appointment of counsel before the filing of a default judgment; the latter make appointment of counsel discretionary at earlier or less critical stages. The language mandating the appointment of an attorney is in a section that starts with, "if there shall be a default of any appearance by the defendant, the plaintiff, before entering judgment...." 50 U.S.C.A. app. § 520(1); N.J.S.A. 38:23C-4. Those sections specifically require the filing of an affidavit of non-military service, which in our state and under our statute must be filed after default but twenty days prior to default judgment. The sections that use the permissive "may" in relation to appointment of an attorney make no reference to default judgment. 50 U.S.C.A. app. § 521; N.J.S.A. 38:23C-6. They refer to any action or proceeding in which a person in military service is a party if such party does not appear therein or is not *427 represented by an authorized attorney. That can be understood to mean that the appointment of an attorney is mandatory when default judgment is to be considered but that up to such juncture or in any other proceeding the appointment of an attorney is discretionary.
Where a person in the military involved in a bar fight with numerous other individuals is sued while he is actively serving in the military, and he claims self-defense, the potential for prejudice is obvious if an attorney is not appointed to protect his interests. Here, in the defendant's absence, all the other individuals were able to point the finger at him and shift responsibility to him for the vast majority of the blame. He was not in a position to participate in any of the settlement discussions, to depose witnesses, or to conduct discovery calculated to explore plaintiff's claims or to establish his defenses. There can be no doubt that under those circumstances it was an abuse of discretion not to appoint an attorney and, later, not to vacate default.
The pertinent statutes expressly provide that a judgment or final order should be set aside or vacated:
If any judgment shall be rendered in any action or proceeding governed by this section against any person in military service during the period of such service or within thirty days thereafter, and it appears that such person was prejudiced by reason of his military service in making his defense thereto, such judgment may, upon application, made by such person or his legal representative, not later than ninety days after the termination of such service, be opened by the court rendering the same and such defendant or his legal representative let in to defend; provided it is made to appear that the defendant has a meritorious legal defense to the action or some part thereof.
[50 U.S.C.A. app. § 520(4).]
N.J.S.A. 38:23C-7 has nearly identical language.
We recognize that a number of jurisdictions have found that the failure to appoint an attorney under either section of the federal act resulted in judgments or orders that were not void, but voidable with a showing of prejudice and a meritorious or legal defense in accord with 50 U.S.C.A.App. § 520(4). Davidson v. General Finance Corporation, 295 F.Supp. 878 (N.D.Ga.1968); Akers v. Bonifasi, 629 F.Supp. 1212 (M.D.Tenn.1984); Allen v. Allen, 30 Cal.2d 433, 182 P.2d 551 (1947); Rentfrow v. Wilson, 213 A.2d 295 (D.C.1965); Nickels v. York, 725 N.E.2d 997, 1003 (Ind.App.2000); Krumme v. Krumme, 6 Kan.App.2d 939, 636 P.2d 814, 817 (1981); Ostrowski v. Pethick, 404 Pa.Super. 392, 590 A.2d 1290, 1293 (1991); Hawkins v. Hawkins, 999 S.W.2d 171, 174 (Tex.App.1999); Contra McDaniel v. McDaniel, 259 S.W.2d 633 (Tex.Civ.App.1953). The United States Supreme Court has held, however, that a defendant's absence when his rights or liabilities are being adjudged to be prima facie prejudicial. Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 1231, 87 L.Ed. 1587 (1943).
In this case, defendant's active military service excused his default and, treating his application indulgently, he has a potentially meritorious defense that he will not be able to present unless the default is also vacated. The failure to vacate default was an improper exercise of discretion.
We reverse and remand with the direction to the trial court to vacate the default and to allow defendant to defend this cause on both liability and damage.
Reversed and remanded.
NOTES
[1] Defendant's name is misspelled "Kuhni" in the caption.
[2] The Soldiers' and Sailors' Civil Relief Act of 1940 was amended on December 19, 2003. For purposes of this appeal, unless otherwise noted, any reference is to the statute in effect prior to the amendment.
[3] As mentioned, the federal statute has since been amended. Section 520 has been omitted and incorporated into section 521. Section 521(b)(2) now reads, "Appointment of attorney to represent defendant in military service. If in an action covered by this section it appears that the defendant is in military service, the court may not enter a judgment until after the court appoints an attorney to represent the defendant. If an attorney appointed under this section to represent a servicemember cannot locate the servicemember, actions by the attorney in the case shall not waive any defense of the servicemember or otherwise bind the servicemember." 50 U.S.C.A. app. § 521(b)(2).